The Honorable Chief Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE | NO. 2:21-MC-0007 RSM |
| APPLICATION OF FORBES MEDIA LLC AND THOMAS BREWSTER TO UNSEAL COURT RECORDS. | GOVERNMENT'S RESPONSE IN OPPOSITION |

## THE UNITED STATES' RESPONSE IN OPPOSITION TO FORBES'S PETITION TO UNSEAL CERTAIN COURT RECORDS

The United States respectfully submits this response in opposition to the petition by Forbes Media LLC and Thomas Brewster (collectively, "petitioners") to unseal certain court records relating to ongoing law enforcement actions. Neither the First Amendment nor the common law requires this Court to unseal the records that petitioners seek, and compelling law-enforcement interests demand the continued sealing of those materials. The Court should deny the petition.

## BACKGROUND

On January 25, 2021, petitioners asked this Court to unseal court records docketed at GJ-17-432 and GJ-19-097. Pet. 1. The petition states that these records

Government Response in Opposition
2:21-MC-0007 RSM

1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

relate to the United States' application for two orders under the All Writs Act, 28 U.S.C. § 1651, "[a]ccording to records unsealed in the Southern District of California in February 2020." Pet 4.[1]

## I.     The All Writs Act

The All Writs Act, 28 U.S.C. § 1651, authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  A federal court may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States* v. *New York Tel. Co.*, 434 U.S. 159, 172 (1977).  But the Act is not a freestanding basis of jurisdiction; it gives courts "the power to implement the orders they issue by compelling persons not parties to the

---

[1] The petition's description of the Southern District of California records as "unsealed" is incomplete.  As the United States' February 16, 2021, motion to dismiss the petition explains, the Southern District of California court records that petitioners have attached to their petition were temporarily unsealed in 2020 as a result of a clerical mistake, but they were then resealed and do not currently appear on the docket of the Southern District of California case.  To the extent that the petition gives rise to the impression that the United States conceded that the materials from the Southern District of California case should be unsealed or the Southern District of California District Court affirmatively ruled that unsealing was no longer warranted, that impression is incorrect.  There is no order on the docket (which was attached to the United States' motion to dismiss) directing that the records should be unsealed, and the United States has consistently maintained that the records should be sealed.  *See* ¶ 5, Declaration of Special Agent Jared S. Brown (attached to this response as Exhibit A).

Government Response in Opposition
2:21-MC-0007 RSM

2

action to act."  14AA Charles Alan Wright et al., *Federal Practice and Procedure* §
3691 (4th ed. 2011).

The Act is "designed to aid the courts in the exercise of their jurisdiction."
*Plum Creek Lumber Co.* v. *Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979).  As relevant
here, the Act "permits the district court, in aid of a valid warrant, to order a third
party to provide nonburdensome technical assistance to law enforcement officers."
*Id.* at 1289.

## II.    The petition

Petitioners suggest that the records they seek date back to 2016 and that it is
likely "that the underlying arrest warrants, which are now more than a year old, have
already been executed." Pet. Mem. 11.  Both suggestions are mistaken.  As the docket
numbers for the AWA materials reflect, the first of these two matters was initiated
in 2017 and the second in 2019.  And the records that petitioners seek relate to active
investigation(s)—All Writs Act orders issued to assist the United States in its efforts
to execute sealed federal arrest warrants against foreign nationals located abroad in
connection with sealed indictments in an ongoing criminal investigation or
investigations, as set forth in more detail in the declaration of Special Agent Jared S.
Brown of the Federal Bureau of Investigation that is attached as Exhibit A to this
response.[2]  The records contain information regarding grand jury investigation(s),

---

[2] As explained in the United States' February 16th motion to dismiss, the local rules provide that a "non-party seeking access to a sealed document may intervene in a case for the purpose of filing a motion to unseal the document." Local Rules, W.D. Wash. LCR 5(g)(8).  Petitioners have not sought to intervene in either of the matters that they have asked this Court to unseal and have instead filed their petition as a new, miscellaneous case.  As a consequence, the records

Government Response in Opposition
2:21-MC-0007 RSM

3

fugitive investigation(s), and law enforcement's efforts to arrest charged individuals, among other things, and disclosing that information would frustrate the government's efforts to apprehend the individuals who have been charged with federal crimes. Decl. ¶ 9, 11, 13, 15. The charged defendants have used sophisticated means to conceal their identities and locations, and they reside in places from which it would be difficult to obtain extradition. Decl. ¶ 8.

The AWA applications at issue set forth information describing the investigation(s) and identifying individuals who are the subject of arrest warrants. Decl. ¶ 9, 13. They asked the Court to order Sabre, Inc., a third party, to provide specific information from its records about the individuals to aid the United States' effort to effectuate the warrants. Decl. ¶ 9. The applications also asked the Court to seal the applications and the resulting orders. Decl. ¶ 9.

The Court issued the requested All Writs Act orders. Decl. ¶ 10. Like the applications, the orders include information identifying the subjects of arrest warrants. Decl. ¶ 9, 11. The Court sealed the orders and the United States' applications, and those records remain under seal. Decl. ¶ 10. As of the date of this filing, the criminal investigation(s) are ongoing, and the materials at issue name individuals subject to sealed indictments and active, sealed arrest warrants, among other things. Decl. ¶ 13.

---

that petitioners seek are not part of the record in this proceeding. As a second consequence, the petition asks this Court to review sealing orders entered by a different judge or judges of this Court even though the underlying matters have not been reassigned to it.

Government Response in Opposition
2:21-MC-0007 RSM

4

The petition asks the Court to unseal (1) All Writs Act orders docketed at GJ-17-432 and GJ-19-097; (2) the government's applications for those orders including the applications for sealing and any supporting documents; (3) any other court records relating to the orders; and (4) the docket in GJ-17-432 and GJ-19-097 and all docket entries.  In support of that request, petitioners claim that the public and the press, including petitioners, have "a strong interest" in the unsealing of these court records (collectively, "the All Writs Act materials").  Pet. 2; *see also* Pet. Mem. 4-5.[3]

## ARGUMENT

If the Court reaches the merits of the petition, it should deny it.  Neither the First Amendment nor the common law entitles petitioners to access the records they seek, and this Court should deny petitioners' unsealing request because compelling grand jury, law-enforcement, and privacy interests require the continued sealing of the records.

## I.    The First Amendment does not entitle petitioners to unsealing

The First Amendment protects a qualified right of access to several stages of criminal proceedings.  *Press-Enterprise Co. v. Superior Court. of Calif. for Riverside County*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*); *see id.* at 9; *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 603-04 (1982) (recognizing "the First

---

[3] Petitioners have filed similar petitions in two other district courts.  *See In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 2:21-mc-52-MRH, Doc. 1 (W.D. Pa.) (filed Jan. 25, 2021); *In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 3:21-mc-80017-TSH, Doc. 1 (N.D. Cal.) (filed Jan. 25, 2021).

Government Response in Opposition
2:21-MC-0007 RSM

5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Amendment right of access to criminal trials"); *United States* v. *Doe*, 870 F.3d 991, 996 (9th Cir. 2017).

When this qualified right attaches to a particular criminal proceeding, the proceeding may nevertheless be closed to the public if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise Co. v. Superior Court of Calif., Riverside County*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*)). Here, no First Amendment right of access attaches to the records that petitioners seek, and in any event, compelling interests require the continued sealing of those materials.

## A.   Petitioners have no first amendment right of access to the records they seek

To determine whether a qualified First Amendment right of access attaches to a particular criminal proceeding, courts apply a two-part "experience and logic" test that considers (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8-9; *Doe*, 870 F.3d at 997. Petitioners' unsealing request fails both prongs of the experience-and-logic test, and petitioners have not claimed otherwise. Petitioners accordingly have no First Amendment right of access to the All Writs Act materials they seek.

1.   No history of public access exists for proceedings relating to an All Writs Act order that requires a third party to assist in the execution of a sealed federal

Government Response in Opposition
2:21-MC-0007 RSM

6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

arrest warrant.  The Supreme Court first recognized a qualified First Amendment right of access to certain criminal proceedings in the context of criminal trials, which an "unbroken, uncontradicted" line of history showed to have "been open to all who care to observe." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 578 (1980) (plurality).  The Court later held that the right applies to jury selection and to the transcript of a "preliminary hearing" in a criminal case that "function[ed] much like a full-scale trial." *Press-Enterprise II*, 478 U.S. at 7, *see id.* at 10-13.  And the Ninth Circuit has extended the right to some aspects of guilty-plea proceedings, *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008); *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990); and in-court sentencing proceedings, *Doe*, 870 F.3d at 997.

But other stages of criminal proceedings have no tradition of public access.  For example, "grand jury proceedings have traditionally been closed to the public and the accused." *Press-Enterprise II*, 478 U.S. at 10; *see also Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.218 (1979).   In addition, "[t]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved." *United States v. U.S. Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 320-321 (1972).  The Ninth Circuit thus has found "no historical tradition of public access to warrant proceedings" during an ongoing investigation, even though search-warrant materials often become public after the government serves a warrant. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989); *see id.* at 1214; *see also U.S. Dist.*

Government Response in Opposition
2:21-MC-0007 RSM

7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Court for Eastern Dist. of Mich.*, 407 U.S. at 321 ("[A] warrant application involves no public or adversary proceedings: it is an ex parte request before a magistrate or judge."); *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) ("In the post-investigation context, warrant materials have generally been open to the public.").

Petitioners urge this Court to consider (Pet. Mem. 7-10) whether the public has historically had access to court orders, applications for relief, and docket sheets. That is the wrong question. When the Ninth Circuit applies the experience-and-logic test to the "category of documents" sought by a litigant, it defines the category more narrowly than that. *United States v. Index Newspaper,* 766 F.3d 1072, 1084 (9th Cir. 2014). In *Index Newspaper*, for example, the Court treated "filings and transcripts relating to motions to quash grand jury subpoenas," "the closed portions of contempt proceedings containing discussion of matters occurring before the grand jury," and "motions to hold a grand jury witness in contempt" as separate classes of documents (and concluded that there was no presumptive First Amendment right to access any of them). *Id.*

The appropriate categories here are not court orders, applications for relief, and dockets, or even AWA matters generally. Instead, this Court should apply the experience-and-logic test to AWA materials concerning and issued in aid of active, sealed indictments and arrest warrants. As explained, a court may issue an order under the All Writs Act only in aid of some other authority. An AWA order in aid of an arrest warrant is thus more closely linked to, and indeed derivate of, the authority

Government Response in Opposition
2:21-MC-0007 RSM

8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to issue an arrest warrant than, for example, the contempt proceedings at issue in *Index Newspapers* were to the grand jury proceedings from which they arose. 766 F.3d at 1093. Because the All Writs Act materials at issue here concern an order issued in aid of the authority to issue an arrest warrant, the history of sealing arrest warrants weigh heavily in favor of sealing the AWA materials here.

The declaration explains that the AWA materials that petitioners seek relate to one or more ongoing investigations. Decl. ¶ 8, 9. The Ninth Circuit has repeatedly held that there is no historical tradition of access to search warrant materials during an ongoing investigation. Because the *ex parte* All Writs Act proceedings in this case were in aid of the execution of arrest warrants and indictments that are themselves under seal, they should be treated like search warrants materials during an ongoing investigation, that is, as proceedings to which the public has historically not had access. The government is aware of no court that has recognized a history of public access to All Writs Act proceedings in aid of active, sealed arrest warrants like the ones at issue here, and petitioners do not argue otherwise.[4] Indeed, secrecy is essential and appropriate in these circumstances; the public interest here weighs in favor of apprehending individuals who violate the laws of the United States and harm

---

[4] Petitioners' fail to cite a single example in which a third-party has been allowed to interject themselves into an ongoing fugitive investigation. Nor do petitioners square their purported right of access with the well-established protections that are designed to protect the functioning of the grand jury. In essence, petitioners seek not just a front-row seat to law enforcement's efforts to apprehend fugitives, but also a sneak preview of charges returned by the grand jury. Fugitive operations simply could not be conducted safely and effectively with the sort of access sought by petitioners.

Government Response in Opposition
2:21-MC-0007 RSM

9

its citizens so that they may be prosecuted by way of a public trial, not in revealing information that might thwart that effort.

Instead of identifying support for granting access to on-going fugitive searches, petitioners focus on the categories of court orders, government applications, and docket sheets, contending that those types of documents have historically been available to the public regardless of the proceedings to which they relate. But the cases that petitioners cite in support of that proposition do not consider the type of document at issue in isolation, untethered to the treatment of the proceeding in which the document appears. *See, e.g.*, *Index Newspapers*, 766 at 1084 (explaining that the experience-and-logic test is used "to determine whether the First Amendment right of access applies to a particular proceeding" and "documents generated as part of" it); *In re Copley Press*, 518 F.3d 1022, 1027-28 (9th Cir. 2008) (analyzing separately access to each type of document and hearing transcript, and even to those documents at different stages of the same matter). Also, while courts have identified a right of access to docket sheets where the proceedings described in the docket were themselves generally subject to a right of access, courts have reached the opposite conclusion in cases involving grand jury matters and other orders authorizing pretrial investigative steps. *See, e.g.*, *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 295 (4th Cir. 2013) ("[W]e have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps, which are

Government Response in Opposition
2:21-MC-0007 RSM

10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

all akin to grand jury investigations, must be publicly docketed."); *In re Sealed Case*, 199 F.3d 522, 525-26 (D.C. Cir. 2000) (same for grand jury ancillary proceedings).

      2.    Considerations of "logic" also weigh against a right of access because public access would not "play[] a particularly significant positive role in" the functioning of proceedings to secure third-party assistance in executing arrest warrants. *Press-Enterprise II*, 478 U.S. at 9, 11.  In support of their request for unsealing, petitioners contend that the public and the press have "a strong interest in observing and understanding the consideration and disposition of matters by the federal courts," especially when "the action of the Court concerns actions taken by the executive branch" or "would shed light on the government's collection of location records," and especially insofar as they may concern location information.  Pet. 2; *see also* Pet. Mem. 4-5.  The Supreme Court has recognized, however, that "[a]lthough many governmental processes best operate under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9. Courts have accordingly found that logic does not favor public access in circumstances where, as here, disclosure could hinder the government's ability to investigate and prosecute crimes.

      Instead, the Supreme Court has explained that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," in part because allowing public access to such "preindictment proceedings" would lead to "the risk that those about to be indicted would flee, or would try to influence individual

Government Response in Opposition
2:21-MC-0007 RSM

11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

grand jurors to vote against indictment." *Douglas Oil Co.*, 441 U.S. at 219.  Likewise, the proceedings for the issuance of a search warrant are "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978); *see also Times Mirror Co.*, 873 F.2d at 1215 ("[I]f the warrant proceeding itself were open to the public, there would be an obvious risk that the subject of a search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed.").  And even if such a proceeding "remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Times Mirror Co.*, 873 F.2d at 1215; *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (explaining that "the need for sealing affidavits may remain after execution and in some instances even after indictment").[5]

Similar considerations have prompted at least one district court to conclude that the public has no First Amendment right of access to All Writs Act orders that require a third party to provide assistance "in furtherance of an underlying [search] warrant or surveillance order." *In re Granick*, 388 F. Supp. 3d at 1129-30.  As that court explained, "[a]pplications for [All Writs Act] orders are typically issued during

---

[5] Congress has also acknowledged the need for secrecy in covert stages of an investigation, even when the government's investigation requires the assistance of a third-party.  For example, Congress has authorized the use of non-disclosure orders in conjunction with the issuance of pen-trap orders pursuant to 18 U.S.C. § 3123 and wiretap orders pursuant to 18 U.S.C. § 2511.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the covert stages of an investigation and contain an explanation of why the order is necessary to a criminal investigation." *Id.* at 1129. The materials from All Writs Act proceedings thus "may discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, and sensitive law enforcement techniques." *Id.*

The All Writs Act proceedings at issue here concern a different type of third-party assistance, *i.e.*, assistance in the execution of a sealed arrest warrant, but releasing these materials would give rise to similar concerns. The All Writs Act materials contain information that identifies the subjects of sealed arrest warrants and reveals the existence of a grand jury investigation or investigations, sealed indictments, and resulting fugitive investigations. Denying the petition would preserve the secrecy of the ongoing investigation or investigations (which in turn would help prevent both destruction of evidence and flight by named individuals or their co-conspirators). Maintaining the secrecy of these investigation(s) not only protects the functioning of the grand jury, but also protects the safety of law enforcement officers involved in any future arrest operation. Denying the petition would also help protect sources and methods used by the United States as described in the attached declaration.

To guard against the risk that "criminal defendants not yet in custody may elude arrest upon learning of their indictment," *United States v. Balsam*, 203 F.3d 72, 81 (1st Cir. 2000), Federal Rule of Criminal Procedure 6(e) authorizes a magistrate judge to order the sealing of an indictment "until the defendant is in

Government Response in Opposition
2:21-MC-0007 RSM

13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

custody or has been released pending trial." Fed. R. Crim. P. 6(e)(4). The same concerns justify the sealing of All Writs Act proceedings aimed at effectuating an arrest based on charges in an underlying sealed indictment. Conversely, opening the All Writs Act materials to public view could prompt the targets of the arrest warrants to flee or take other steps to thwart the execution of the warrants. And to the extent that the All Writs Act documents reveal the existence of sealed indictments, their public release would likely violate Rule 6(e)'s prohibition on the public disclosure of information that reveals the existence of a sealed indictment "except as necessary to issue or execute a warrant or summons," Fed. R. Crim. P. 6(e)(4).

Furthermore, once the underlying arrest warrants have been executed, the All Writs Act materials will still reveal techniques that the government used to effectuate the arrests and explain a third party's ability or willingness to provide certain types of assistance in furtherance of the government's efforts. Dissemination of those materials would enable wrongdoers to take measures to evade future arrests, including by avoiding or even retaliating against the third party who was ordered to assist the government. "Openness" here thus would "frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice." *Times Mirror*, 873 F.2d at 1213.

Because both experience and logic therefore weigh against a public right of access to the All Writs Act materials in this case, petitioners have no qualified First Amendment right to access those materials.

Government Response in Opposition
2:21-MC-0007 RSM                                    14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.    Compelling interests require the continued sealing of the All Writs Act materials**

Even if petitioners had a qualified First Amendment right to access the All Writs Act materials, the Court should continue to maintain those records under seal because "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise I*, 464 U.S. at 510); *Doe*, 870 F.3d at 998.  As explained in the attached declaration, the court records at issue here relate to at least one ongoing fugitive investigation. Decl. ¶ 9, 12.   Unsealing the All Writs Act materials could therefore jeopardize the government's ongoing efforts to investigate and prosecute the underlying crimes. Opening that information to the public could prompt the subject(s) of the investigation(s) or their associates to take steps to evade apprehension and endanger law enforcement officers who attempt to arrest them in the future.

More generally, "[t]he government has a substantial interest in protecting sensitive sources and methods of gathering information." *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) (en banc).  That interest is compelling because granting the public access to such sources and methods could give wrongdoers a roadmap for thwarting future efforts to use similar techniques to investigate crimes and effectuate arrest warrants.

The strength of the government's interest in protecting the functioning of the grand jury and law enforcement's efforts to apprehend fugitives charged with federal crimes is not diminished by petitioners' public reporting that Sabre offers the

Government Response in Opposition
2:21-MC-0007 RSM

15

government "another tool to watch over travelers across the world." Thomas

Brewster, *The FBI Is Secretly Using A $2 Billion Travel Company As A Global Surveillance Tool*, Forbes (July 16, 2020 7:10 a.m.), available at https://perma.cc/R96R-AXL9. Although petitioners have published information about what the government asked Sabre to provide in one case, petitioners' article otherwise provides only generalized information about Sabre's potential capacity to provide "traveler information" to assist the government in criminal investigations and prosecutions. *See id*. Petitioners' speculation about how the government might use "traveler information" from Sabre is wholly divorced from any consideration of the limits of criminal investigations or the All Writs Act. *See id.; Plum Creek Lumber Co.,* 608 F.2d at 1289. And the petition's discussion of these issues makes no mention of Sabre's public statement contradicting Forbes's reporting. *See* https://www.travelweekly.com/Travel-News/Travel-Technology/Sabre-responds-to-speculative-Forbes-report.

In any event, the All Writs Act materials in this case contain sensitive information beyond what petitioners have publicly reported, consistent with petitioners' report that "more questions" remain about the nature of the assistance that Sabre has provided, and is willing to provide, to the government. *Id.; see also* Decl. ¶ 15, 16. When unsealing materials would reveal "significantly more information" implicating compelling government interests, public awareness of some details about that matter does not vitiate those interests. *Dhiab v. Trump*, 852 F.3d 1087, 1096 (D.C. Cir. 2017); *see also Virginia Dep't of State Police v. Washington Post*,

Government Response in Opposition
2:21-MC-0007 RSM

16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

386 F.3d 567 (4th Cir. 2004) (considering "whether the granting of access to the contents of an ongoing police investigation file will disclose facts that are otherwise unknown to the public"); *Index Newspapers LLC*, 766 F.3d at 1087-88 (grand jury witness's decision to "disclose what he may have learned about the grand jury investigation" did not eliminate government's interest in grand jury secrecy).

In cases addressing the qualified law-enforcement privilege in criminal prosecutions, courts allow the government to withhold information from criminal defendants about specific law-enforcement techniques when disclosure would compromise the efficacy of that technique in future criminal investigations, even though the criminal defendant and the public may know that the government employs that practice as a general matter. *See, e.g.*, *In re the City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) ("detailed information about the undercover operations of the NYPD"); *United States v. Green*, 670 F.2d 1148, 1155-56 (D.C. Cir. 1981) ("police surveillance locations"). If the government's interest in preserving the efficacy of evidence-gathering techniques in future investigations can be strong enough to keep that information from a criminal defendant facing loss of liberty, then it surely is sufficient to shield that information from the public at large, especially given the strong public interest in ensuring the effective investigation of crime and the execution of federal arrest warrants. *Cf. Doe*, 870 F.3d at 1000 (recognizing that the government interest in cooperator safety is based in part on the need to advance "future criminal investigations").

Government Response in Opposition
2:21-MC-0007 RSM

17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.     The common law does not entitle petitioners to unsealing

The Supreme Court has recognized a qualified "common-law right of access to judicial records," which amounts to "a general right to inspect and copy public records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). "A narrow range of documents is not subject to the right of public access at all because the records have 'traditionally been kept secret for important policy reasons.'" *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Times Mirror Co.*, 873 F.2d at 1219). And even for documents that are subject to the right of public access, the right is not absolute. *Nixon*, 435 U.S. at 598.

The Ninth Circuit has identified three categories of documents that are not subject to the public right of access because they have traditionally been kept secret for important policy reasons: "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation," *Kamakana*, 447 F.3d at 1178 (citing *Times Mirror*, 873 F.2d and 1219), *see also In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 781 (9th Cir. 1982), and attorney-client privileged materials, *Lambright* v. *Ryan*, 698 F.3d 808, 820 (9th Cir. 2012). Publicly disclosing the AWA materials would implicate many of the same concerns as publicly disclosing warrant materials in the midst of a pre-indictment investigation, that is, public disclosure would risk undermining an ongoing investigation and frustrating the efforts to arrest international fugitives. To be sure, the Ninth Circuit has stated that it will "not readily add classes of documents to the category" of documents that are not subject to the common law right of access, *id*. at 1185, and it has also held that "the public

has a qualified common law right of access to warrant materials after an investigation

has been terminated," *Custer Battlefield,* 658 F.3d at 1194. But this Court could

conclude based on an analogy to the search warrant materials at issue in *Custer*

*Battlefield* that AWA materials issued in aid of an active arrest warrant are not

subject to a common law public right of access.

Even if this court concludes that the AWA materials are subject to the

common light right of public access, it should exercise its discretion to deny access

here. The Ninth Circuit has explained that the common law right of access does not

extend to all judicial records; instead, petitioners must make a threshold showing

that "disclosure would serve the ends of justice." *United States* v. *Schlette*, 842 F.2d

1574, 1581 (9th Cir. 1988). "Every court has supervisory power over its own records

and files," *id.*, and must "weigh[] the interests advanced by the parties in light of the

public interest and the duty of the courts," *Nixon*, 435 U.S. at 602; *United States v.*

*Sleugh*, 896 F.3d 1007, 1013 (9th Cir. 2018). The Supreme Court has therefore

recognized that "the decision as to access is one best left to the sound discretion of the

trial court, a discretion to be exercised in light of the relevant facts and circumstances

of the particular case." *Nixon*, 435 U.S. at 599.

The United States has a compelling interest in the continued sealing of these

materials because continued sealing will help preserve the secrecy of the ongoing

fugitive investigation(s) and what they may reveal about grand jury investigations,

which in turn will help prevent both the destruction of evidence and flight by the

defendants or their co-conspirators, and will help protect the sources and methods

Government Response in Opposition
2:21-MC-0007 RSM

19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

used to apprehend international fugitives.   Moreover, the continued sealing will protect the safety of law enforcement officers involved in any arrest operation.[6]

The common law does not entitle petitioners to unsealing of the All Writs Act materials here because these compelling government interests outweigh any presumption of public access.   Moreover, petitioners' stated interest in the materials is too general to meet their burden of showing that disclosure would serve the ends of justice.   *Times Mirror*, 873 F.2d at 1219 and n.13 (where there is there is no history of access, common law right to access only arises when the party seeking access makes a threshold showing that disclosure would serve the ends of justice).   The continued sealing of the All Writs Act materials is accordingly a proper exercise of this Court's discretion under the common law.

//

//

//

//

//

---

[6] Unsealing redacted AWA materials, an option that petitioners mention only in passing, Pet. Mem. 11, would not adequately protect the government's interests because redacted versions of the AWA materials would still make it possible to make certain inferences about the underlying case(s) that would potentially damage the investigation(s). It would also make it possible to infer non-public information about law enforcement sources and methods.  For that reason, this is a case in which the United States' compelling interests in secrecy cannot be accommodated by redactions.  *Cf. Custer Battlefield*, 658 F.3d at 1195 n.5 (noting that "the need to protect an ongoing investigation," the need to preserve the secrecy of grand jury proceedings, and other interests can justify the "withholding of disclosure" of warrant materials "outright").

1

## CONCLUSION

2      For the reasons set forth above, the government respectfully requests that the

3   Court deny petitioners' request for unsealing.

4

5      Dated March 1, 2021.

6

7                                              Respectfully submitted,

8

9                                              TESSA M. GORMAN
                                               Acting United States Attorney

10

11                                             */s/ Teal Luthy Miller*
                                               TEAL LUTHY MILLER

12                                             Assistant United States Attorney
                                               United States Attorney's Office

13                                             700 Stewart Street, Suite 5220

14                                             Seattle, Washington 98101-1271
                                               Phone: 206-553-7970

15                                             E-mail:  teal.miller@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28

Government Response in Opposition
2:21-MC-0007 RSM                                21